in conflict with the cases we have here cited. These are: Rex v. Richardson, 1 Moody & R. 402, in 1834; Rex v. Fowle, 4 Car. & P. 592, in 1831; Rex v. Biers, 1 Adol. & E. 327, in 1834; and Reg. v. Peck, 9 Adol. & E. 686, in 1839. The same question has arisen in the courts of Massachusetts, Maine, New York, and Michigan, and has been decided with reference to the English decisions, as we think, more in accordance with the general principles of the law."

The views of the supreme court of Vermont in the case of State v. Keach, 40 Vt. 113, cited by the supreme court of the United States, and of the supreme court of Massachusetts (Com. v. Hunt, 4 Metc. (Mass.) 111; Com. v. Eastman, 1 Cush. 189; Com. v. Shedd, 7 Cush. 514), and of the supreme court of Pennsylvania (Hartmann v. Com., 5 Pa. St. 60), are to the same effect, and equally pointed and decisive. See, also, Archb. Cr. Pl. & Ev. (6th Am. Ed.) 620, and cases cited.

The principles laid down by the supreme court of the United States in the case of U. S. v. Cruikshank, supra, cover every question which arises as to the sufficiency of the second count of the indictment now under consideration. Let us turn to this count and see what it alleges against the defendants: (Here the court read this count, as is above set out.) This count is divisible into two parts: first, the conspiracy portion; second, the portion which charges what is termed the "overt act" —i. e., "the act done" by the defendants "to effect the object of the conspiracy." The conspiracy to defraud the United States is alleged to consist in "certifying that certain false and fraudulent accounts and vouchers for material furnished for use in the construction of the said custom-house and post-office, and for labor performed on said building, were true and correct." What can be more general and indefinite than this? It is not alleged that the conspiracy was to certify falsely all accounts and vouchers for material and labor for the building, but to certify "that certain false accounts and vouchers for material and labor were true and correct." This is all. But what accounts and what vouchers, is not alleged. How does this advise the defendant so as to enable him to make his defence; what accounts or what vouchers are to be impeached? How can the court know, if a trial is gone into under this indictment, whether the accounts and vouchers offered in evidence by the government are the same ones in respect to which the grand jury found the bill of indictment. Lambert v. People, 9 Cow. 578. If the defendants are convicted or acquitted on an indictment so general and uncertain, how can they plead the judgment in bar of another prosecution? How does it appear that the accounts and vouchers were such as that an in-

tent to defraud the United States can be predicated of them? No dates, sums, amounts, persons, or materials are mentioned, and it does not appear that this could not be done, for the allegation is that the conspiracy related to "certain false and fraudulent accounts." We agree with the supreme court of Pennsylvania, in the case cited, that "precision in the description of the offence is of the last importance to the innocent," and hence the importance of the decision of the United States supreme court in the Cruikshank Case, which settles the law for all the courts of the United States.

This indictment does not advise the defendants what they will have to meet, and they cannot tell from it which of the multitudinous vouchers and accounts they have certified will be relied on by the government to establish the charge.

This is an indictment for conspiracy to defraud the United States, and the American decisions are uniform to the point that the means by which the fraud is to be effected must be described in some part of the indictment with certainty. U. S. v. Ulrici [Case No. 16,594]; State v. Parker, supra; State v. Keach, supra; Com. v. Hunt, supra; State v. Roberts, supra. Nor is the uncertainty in the present indictment helped out by the averments with respect to the overt act. It is charged in this behalf · that the defendants presented to the disbursing agent of the United States certain written and printed papers, purporting to be true and correct pay-rolls of mechanics and laborers on the building for the month of November, 1874, which were vouchers for the payment of the sum of $21,-862.02. But it is not alleged that these pay-rolls were false or not true, and much less that the defendants knew them to be so. The averments in respect to the overt act do not show any criminal offence in connection with those pay-rolls, and, hence, we say that they cannot, in any view, aid the defects in the conspiracy portion of the count. Reg. v. Rex, 7 Adol. & E. (N. S.) 782.

We have gone into this matter thus fully, so that the counsel for the government should be advised of the views of the court to guide his further action.

I am authorized to state that TREAT, District Judge, fully concurs in these views.

Judgment accordingly.

UNITED STATES (WALSH v.). See Case No. 17,116.

## Case No. 16,637.

UNITED STATES v. WANGEREIN.

[See Case No. 17,141.]